IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00150-MR

| | |
|---|---|
| SHELBY REID LENTZ, ) ) Plaintiff, ) ) vs. ) ) ) BRANDESHAWN HARRIS, ) et al., ) ) Defendants. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 28].

**I.    PROCEDURAL BACKGROUND**

On October 17, 2022, Plaintiff Shelby Reid Lentz ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. [Doc. 1]. Plaintiff's unverified Complaint, in which he named, in their individual and official capacities, Brandeshawn Harris, identified as the North Carolina Department

of Public Safety (NCDPS)[1] Interim Commissioner of Prisons; Betty Brown, identified as the NCDAC Director of Chaplaincy Services; Kimberly Grande, identified as the NCDAC Executive Director of the Inmate Grievance Resolution Board (IGRB); and Marcus Hovis, identified as the NCDAC Regional Chaplain Western Region, survived initial review on Plaintiff's First Amendment religious exercise claim. [Id., Doc. 9]. Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, was dismissed for his failure to state a claim for relief. [Doc. 9].

Plaintiff alleges that he is a Sunni Muslim and his religion requires him to wear a turban, but the NCDAC only allows him to wear a Kufi. [Doc. 1 at 5]. Plaintiff filed grievance records and documents evidencing his various requests for permission and accommodation to wear a turban as Exhibits to his Complaint. [See Doc. 1-3]. On August 31, 2022, Plaintiff wrote Defendant Brown asking for assistance in getting approval for a turban. [Id. at 8]. Defendant Hovis responded to that letter, advising Plaintiff that the NCDAC Religious Practices Manual does not list the turban as an approved head covering for the Islamic faith and that subject matter experts

---

[1] The North Carolina Department of Adult Corrections (NCDAC) replaced the NCDPS Division of Adult Corrections after Plaintiff filed his Complaint in this matter. [See Doc. 29-5 at ¶ 2: Brandeshawn Aff.]. For the sake of conformity with the Defendants' forecast of evidence, the Court will herein refer to the NCDPS as the NCDAC.

"designated the Kufi for Islamic practitioners." [Id. at 13]. Although Plaintiff makes no allegations specific to Defendant Harris, the Court inferred for the sake of initial review that Plaintiff named Defendant Harris based on the duties and responsibility presumably incident to Harris' alleged position as Interim Commissioner of Prisons. [Doc. 9 at 2-3; see Doc. 1 at 2]. Plaintiff seeks an injunction requiring the NCDAC to allow Plaintiff to wear a turban and "damages as the court sees fit." [Doc. 1 at 5; see Doc. 9 at 5 (dismissing Plaintiff's official capacity claims for money damages on sovereign immunity grounds)].

After multiple extensions, the deadline to file dispositive motions in this matter was November 6, 2023. [See 8/10/2023, 9/7/2023, & 10/10/2023 Text Orders]. On November 16, 2023, with no party having moved for summary judgment, the Court ordered the parties to show cause for this failure. [Doc. 27]. On November 30, 2023, Defendants timely responded to the show cause order and moved for summary judgment. [Docs. 28, 30]. Plaintiff did not so respond or so move. Defendants argue that summary judgment should be granted because Defendants did not violate Plaintiff's First Amendment religious exercise rights and because qualified immunity bars Plaintiff's claims against Defendants. [Doc. 29]. In support of their summary judgment motion, Defendants submitted a brief, their own affidavits,

Plaintiff's Offender Population Unified System ("OPUS") summary and infraction history, and the NCDPS Religious Practices Manual for the Islam religion. [Docs. 29-1 to 29-8].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 31]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not file a response to Defendants' summary judgment motion. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

5

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

The NCDAC is responsible for approximately 30,000 offenders. In managing an incarcerated population of that size, state-wide policies are implemented to ensure the safety and security of the prisons while upholding the constitutional rights of the offender population. [Doc. 29-5 at ¶ 3]. Among these policies, the NCDAC maintains a Religious Practices Manual, which sets out the accommodations allowed for recognized faith groups to practice their religions while incarcerated. Defendant Brandeshawn is a co-signor approving these policies. [Id.; see Doc. 29-3 at ¶ 4: Hovis Dec.].

The Religious Practices Manual is developed by a committee in conjunction with Chaplaincy Services. Experts are consulted in deciding what religious property and head coverings members of particular faith groups are allowed to possess and wear. When creating the policy for Islam, the NCDAC consulted two Imams, or Islamic religious leaders, who were members of NCDAC staff. Based on these consultations, it was determined that the Kufi is an acceptable head covering for Muslim men to wear. [Id. at

7

¶ 4]. Pursuant to the NCDAC Religious Practices Manual on Islam, male offenders designated as Muslim are allowed to possess, among other things, two black- or white-colored Kufis. [Doc. 29-4 at 2]. These Kufis may be worn at all times, except during searches. [Id.].

A Kufi is a small skull cap. [Doc. 29-5 at ¶ 5]. Turbans, on the other hand, are large pieces of cloth wrapped around the head. Turbans present serious security concerns for prisons because they can be used to conceal contraband, including weapons, drugs, tobacco, writings, restricted publications, or medications. Moreover, the material can be used to assist in escape attempts and individual strands can be separated from inner folds for "fishing" between cells. Turbans may also be used to express a status to other offenders, such as gang membership or seniority. Allowing offenders to wear turbans would require constant searches, diverting significant prison resources from pressing security issues in the prison system. [Id.].

Members of the Sikh faith are allowed to wear turbans as a head covering because, unlike Islam, the Sikh religion has no other acceptable head covering. Moreover, Sikhs represent a much smaller portion of the offender population. Currently, 2,623 offenders are designated as Muslim, including 117 at Alexander, while only four prisoners are designated as Sikh, none of whom are at Alexander. [Id. at ¶ 6].

Defendant Grande is the Executive Director of the NCDAC IGRB. [Doc. 29-6 at ¶ 3: Grande Dec.]. IGRB Grievance Examiners are charged with "investigat[ion] of inmate grievances pursuant to the procedures established by the Administrative Remedy Procedure [ARP]." [Id. at ¶ 4]. Pursuant to the ARP, Defendant Grande signed the Step Three Administrative Remedy Response to a grievance Plaintiff submitted seeking approval to be allowed to possess and wear a turban. [Id. at ¶ 11; Doc. 29-7]. In so doing, Defendant Grande confirmed that Alexander had properly applied the Islamic head covering policy. [Id., Doc. 29-7]. Defendant Grande had no other involvement in any aspect of Plaintiff's Complaint and did not participate in the development of the Islamic head covering policy. [Id. at ¶ 12].

Before she retired, Defendant Betty Brown was the Director of Chaplaincy Services. [Doc. 29-8 at ¶ 2: Brown Dec.]. She held this position from 2003 to March 1, 2022. [Id.]. The Director of Chaplaincy Services is a supervisory role that provides guidance and assistance for the religious services and programs in all North Carolina prison facilities. [Id.]. Defendant Brown never received Plaintiff's August 31, 2022 letter addressed to her. [Id. at ¶ 3]. Defendant Brown was retired by that time. As Director of Chaplaincy Services, Defendant Brown did not make final decisions on whether to allow

9

any particular religious property to any particular offender. [Id.].

Since the beginning of 2022, Defendant Hovis has been the Western Region Director of Chaplaincy Services. [Doc. 29-3 at ¶ 2]. Before that, he spent 14 years as the Chaplain of Tabor Correctional Institution. [Id.]. As Western Region Director, Defendant Hovis serves in a supervisory role providing supervision of chaplaincy services for the Western Region. [Id.]. The decision to deny Plaintiff's request to wear a turban was made at the facility level according to the Religious Practices Manual Policy for religious personal property. Defendant Hovis has no authority to overturn such facility decisions. When Defendant Hovis received Plaintiff's August 31, 2022 letter, he reviewed the issue and sent Plaintiff a letter confirming that the policy had been correctly applied. [Id. at ¶ 3; Doc. 29-8 at ¶ 3].

## IV. DISCUSSION

As an initial matter, the Court concludes that the Plaintiff has abandoned his First Amendment religious exercise claim by failing to respond to Defendants' motion. In fact, Plaintiff has filed nothing with this Court since December 2022, and did not respond to the Court's Order requiring the parties to show cause for their failure to timely file summary judgment motions. [See Docs. 14, 27]. A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim.

Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing Mentch v. Eastern Sav. Bank, FSB, 949 F.Supp. 1236, 1246-47 (D. Md. 1997)).

Moreover, Defendants are entitled to summary judgment based on the forecasts of evidence before the Court. The Free Exercise Clause of the First Amendment states that "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425 (1981)).

A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably

related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Assuming Plaintiff's Islamic faith is a sincerely held religious belief, there no forecast of evidence that Plaintiff's exercise of his faith was substantially burdened by Defendants' alleged conduct or the relevant policy.[2] The forecast of evidence shows only that, while Plaintiff was not permitted to wear a turban, he was permitted to possess and wear two Kufis,

---

[2] While Plaintiff alleged in his unverified Complaint that he is a Sunni Muslim "required by [his] faith to fully adhere to the Sunna of Prophet Muhammad" and that the NCDAC "only allows Muslims to wear a Kufi which is a Bid'ah (inovation [*sic*])," there is no forecast of evidence here addressing this distinction or how the NCDAC Religious Practices Manual on Islam is insufficient with respect thereto.

which is also an acceptable Muslim head covering. Moreover, the forecast of evidence shows that the policy allowing Muslim offenders to wear Kufi but not turbans is "reasonably related to legitimate penological interests."

Because there is no forecast of evidence of a substantial burden on Plaintiff's exercise of his religion and the forecast of evidence shows that the restriction at issue is reasonably related to legitimate penological interests, the Court would grant Defendants' motion for summary judgment even if Plaintiff had not abandoned this claim.[3] Because the forecast of evidence does not support that a constitutional right was violated, Defendants would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

---

[3] There is no forecast of evidence that Defendants Grande, Brown, or Hovis had any personal participation in the formulation or implementation of the relevant policy or supporting the application of supervisory liability for these Defendants. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). As such, summary judgment is also granted for these Defendants on this ground.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 28] is **GRANTED**, and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge